**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ROBERT BUCK,** | **CIVIL ACTION NO.:** |
| **Plaintiff,** | |
| **VS.** | |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,** | |
| **Defendant.** | **April 10, 2017** |

**COMPLAINT**

NATURE OF ACTION

1. The plaintiff Robert Buck brings this action against the defendant Washington Metropolitan Area Transit Authority for violations of the National Transit Systems Security Act, 6 U.S.C. Section 1142 (“NTSSA”).

JURISDICTION

2. This Court has subject matter jurisdiction in this case pursuant to the NTSSA, 6 U.S.C. Section 1142(c)(7). Venue of this action in this District is proper because the defendant Washington Metropolitan Area Transit Authority (“WMATA”) maintains offices and conducts extensive operations within this District.

PARTIES

3. The defendant WMATA is a publicly owned operator of public transportation that is eligible to receive Federal assistance. As such, it is a public transportation agency within the meaning of 6 U.S.C. Section 1131(5) and is a covered employer within the meaning of the NTSSA, 6 U.S.C. 1142(a) and (b).

4. The plaintiff Robert Buck is a resident of Warminster, Pennsylvania, and at all material times was an employee of WMATA within the meaning of the NTSSA.

## WMATA SAFETY RULES

5. WMATA operates busses and light rail in the Washington, D.C. area transporting hundreds of thousands of people each day. WMATA claims that the safety of the riding public is a high priority and it has adopted safety rules to ensure the safe transportations of its riders.

6. Included among the safety rules in place at WMATA are rules regarding the safe operation of busses and in particular rules for safely exiting passengers at safe locations.

7. Also included among the safety rules in place at WMATA are rules regarding the safe operation of busses and in particular rules prohibiting drivers from engaging in distracted driving by using electronic devices while operating a moving bus.

## NTSSA

8. The NTSSA prohibits a public transportation agency from discharging, demoting, suspending, reprimanding or in any other way discriminating against an employee who provides information to a supervising authority regarding conduct which the employee reasonably believes constitutes a violation relating to public transportation safety. 6 U.S.C. Section 1142(a)(1)(C).

9. The NTSSA prohibits a public transportation agency from discharging, demoting, suspending, reprimanding or in any other way discriminating against an employee who reports a hazardous safety or security condition. 6 U.S.C. Section 1142(b)(1)(A).

## FACTS

10. Plaintiff was employed as a supervisor at WMATA responsible for, among other duties, making sure that bus drivers and other employees comply with the WMATA safety rules and applicable state and federal laws and regulations. Plaintiff monitored compliance with rules that are intended to protect WMATA passengers and the public.

11. On or about March 2, 2013, Plaintiff observed a WMATA shuttle bus driver unload passengers at an unsafe location in violation of WMATA safety rules 1.1, 1.15.2, 2.1 and 2.3. Plaintiff instructed Mr. Julio Santana, one of his team managers, to correct this driver's behavior. When Mr. Santana approached the driver to give him correction, the bus driver, R.V. Mack, cursed at Mr. Santana and shut the bus door in his face. Plaintiff observed all that had occurred with this bus driver and supported Mr. Santana's decision to discipline Mr. Mack and remove him from service. Mr. Mack filed a grievance.

12. Shortly after Plaintiff supported the discipline of bus driver Mack, he met with his supervisor, Mr. Ted Harris, and learned from him that Mack's grievance was supported by Superintendent Sophia Coleman-Hill. Nevertheless, Plaintiff continued to advocate for disciplining the offending bus driver because Mack had willfully violated safety rules concerning the unloading of passengers and had acted in an insubordinate manner when being corrected for the rule violation. Plaintiff made his position about Mack's actions known to Mr. Harris who is a close colleague of Superintendent

Coleman-Hill. Mr. Harris became angry with Plaintiff and yelled at him when Plaintiff insisted that it was proper to discipline this unsafe bus driver.

13. Prior to the above-described meeting with Mr. Harris, Plaintiff had received an outstanding rating in his performance review and he enjoyed an excellent and collegial relationship with his supervisees. As a relatively new manager, he had successfully completed his initial six month probation period in November 2012.

14. Despite his excellent performance, shortly after the above-described meeting with Mr. Harris, Plaintiff was summoned to Mr. Harris' office and given a reprimand memo that falsely accused Plaintiff of having created a "hostile environment" within his department. The disciplinary memo also stated that Plaintiff's completed probation period was being "extended" for an additional six months.

15. On or about September 23, 2013, Plaintiff became aware that WMATA bus driver, Warrior Richardson, had committed a major safety rule violation when he violated WMATA's electronic device policy and the motor vehicle laws of the District of Columbia by using the electronic display device while operating the bus in service. During the following weeks Plaintiff conducted an investigation of this rule violation, including review of video tape and receiving an admission by Mr. Richardson. Plaintiff's investigation revealed that Warrior Richardson violated the electronic device policy.

16. On or about October 9, 2013, after consulting with WMATA's Labor Relations professionals, Plaintiff made the decision to terminate bus driver Richardson for this serious safety rule violation.

17. At the time Plaintiff made the decision to terminate Warrior Richardson he did not know that Mr. Richardson was Ms. Coleman-Hill's son.

18. On or about October 11, 2013 – two days after he terminated Warrior Richardson for the safety rule violation – Plaintiff was terminated by WMATA in retaliation for having reported the hazardous safety conditions related to the above-described behavior by WMATA bus drivers. At the time of his termination, Mr. Harris refused to provide Plaintiff with a reason why he was being fired.

## COUNT ONE - NTSSA

19. The plaintiff adopts by reference and realleges each and every allegation set forth in paragraphs 1 through 18 of this Complaint.

20. The plaintiff engaged in NTSSA subsection (a)(1)(C) and (b)(1)(A) protected activity when he provided information to a supervisor about public transportation safety violations and reported hazardous safety conditions.

21. The defendant WMATA had knowledge of all the plaintiff's protected activities referenced above. The defendant WMATA knew or should have known that such activity was protected under the NTSSA subsections (a)(1)(C) and (b)(1)(A).

22. The defendant WMATA took adverse or unfavorable actions against Plaintiff in whole or in part due to his protected activities when they disciplined and discharged him. In so doing, the defendant acted with reckless disregard for the law and with complete indifference to the NTSSA rights of employees such as the plaintiff.

23. As a result of the defendants' conduct in violation of the NTSSA, the plaintiff has suffered and will suffer various economic harms as well as emotional distress and attorney fees and costs.

24. The plaintiff filed a NTSSA Complaint with the Secretary of Labor's Region 3 OSHA Whistleblower Office on March 10, 2014. That complaint was filed within 180 days from the date the plaintiff became aware of the defendant WMATA's adverse or unfavorable personnel actions against him.

25. The Region 3 OSHA Whistleblower Office of the U.S. Department of Labor commenced its investigation and the plaintiff fully cooperated with OSHA's investigation. However, as of this date the U.S. Department of Labor has not issued a final decision, and it now has been far more than 210 days since the filing of the NTSSA Complaint.

26. Accordingly, pursuant to subsection (c)(7) of the NTSSA, the Plaintiff has a statutory right to bring an original action in United States district court for a jury trial regarding the defendant's violations of the NTSSA. 6 U.S.C. Section 1142(c)(7).

27. Pursuant to 6 U.S.C. 1142(c)(7), Plaintiff now is bringing this original action at law and equity for de novo review by the United States District Court for the District of Columbia, which Court has jurisdiction over this NTSSA action without regard to the amount in controversy.

WHEREFORE, in order to encourage public transportation employees to freely report all hazardous safety conditions without fear of any adverse actions being taken against them, thereby fulfilling the purpose of the NTSSA to promote safety in every area of our nation's public transportation, the Plaintiff demands a Judgment under the NTSSA for all relief necessary to make him whole, including:

--expungement of any and all references to the adverse actions related to the plaintiff's protected activities described above;

--compensatory damages for any economic losses due to defendants' conduct, including lost wages incurred as a result of prosecuting this matter;

--compensatory damages for emotional distress due to defendants' conduct;

--the statutory maximum of punitive damages;

--special damages for all litigation costs including expert witness fees, attorney fees, and costs; and

--any further relief the Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

By his attorney,

/s/ Charles C. Goetsch
Charles C. Goetsch [Bar #101504]
CHARLES GOETSCH LAW OFFICES LLC
405 Orange Street
New Haven, CT 06511
Tel: (203) 672-1370
Fax: (203) 776-3965
charlie@whistleblower.com

and

Stephen J. Fitzgerald
GARRISON, LEVIN-EPSTEIN,
FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, CT 06511
Tel: (203) 777-4425
Fax: (203) 776-3965
sfitzgerald@garrisonlaw.com